UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
VINCENT ARTIS,

                Plaintiff,

     -against-

PHELPS MEMORIAL HOSPITAL ASSOCIATION
AND NORTHWELL HEALTH,

                Defendants.
------------------------------------------------------------------

**COMPLAINT**

Plaintiff Vincent Artis, through the Diederich Law Office, complains of the defendants

Phelps Memorial Hospital Association and Northwell Health as follows:

### Prefatory Statement

This is an action for damages and injunctive relief against defendants Phelps Memorial Hospital Association and Northwell Health ("Defendant"), for its race discrimination and retaliation against Plaintiff in his employment, in violation of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq*., and parallel New York State law.

### THE PARTIES

1.  Plaintiff Vincent Artis is, and was at all times relevant herein, citizen of the United States and a resident of the Village of Sloatsburg, Town of Ramapo, County of Rockland, State of New York.

2.  Defendant Phelps Memorial Hospital Association (hereinafter "Phelps"), upon information and belief, is and at all times relevant herein was a business corporation organized and existing under the laws of the State of New York, with central offices located at Phelps Hospital in Sleepy Hollow, New York, in Westchester County.

3.  Defendant Northwell Health (hereinafter "Northwell"), upon information and belief, is and at all times relevant herein was a business corporation organized and existing under the laws of the State of New York, with central offices located in Westbury, New York.

4.  Defendants are Plaintiff's employer within the meaning of 42 U.S.C. § 2000e-(b).

## JURISDICTION AND VENUE ALLEGATIONS

5.  This court has jurisdiction over this action in either New York State Court, or federal court under 42 U.S.C. § 2000e-5(f) and under 28 U.S.C. § 1331 and § 1343(4).

6.  Venue is proper in this Court.

## FACTUAL ALLEGATIONS

Overview

7.  Plaintiff is 57 years of age and African-American.

8.  Plaintiff began his employment at Phelps Hospital as an Environmental Services Attendant in May 2022, in a "probationary" status.

9.  Plaintiff's probationary status was to last 3 months.

10. Upon satisfactory conclusion of the probationary period, Plaintiff would be able to join the local Union, receive a pay increase from $25 per hour to $31 per hour, and would receive other benefits.

11. Plaintiff had not been written up or given any warnings regarding his job performance during his probationary period.

12. On the contrary, his immediate supervisor Melanie Lopez, had completed Plaintiff's evaluation in July 2022 and gave him a positive review.

Race discrimination

13. Beginning in late June 2022, Plaintiff observed, unfortunately, that he was being treated less favorably than his non-black colleagues.

14. Specifically, he found that the jobs he was being assigned were much worse jobs, and much more arduous jobs, and much more difficult if not impossible to complete than those which were being assigned to his non-black coworkers.

15. For example, beginning sometime in late June 2022, Plaintiff was assigned to clean the lab and the entire MRI room.

16. Prior to this being Plaintiff's assignment, two people were responsible for cleaning the MRI room.

17. Moreover, Plaintiff has been informed that when he was not on duty, two people would be assigned to clean the MRI room, as had been done prior to it becoming Plaintiff's assignment.

18. In addition to these unduly arduous assignments, Plaintiff was assigned to clean other rooms and areas.

19. Thus, Plaintiff found that he was being required to handle two to three times the workload of his non-black coworkers.

20. In order to complete his work by the end of his shift, Plaintiff had to forego the two 15-minute breaks that he was allotted. This cut short or eliminated his allotted time. On many occasions he was prevented from taking any 15-minute break or taking more than a 30 minutes mid-shift break.

21. On or about August 3, 2022, Plaintiff met with two of his supervisors, Mr. Diego (who is white) and Antonio "Tony" Acosta ("Mr. Acosta") (who is white/Hispanic) and asked if they could occasionally give him more reasonable assignments, so that he could get a break from doing the larger, more arduous tasks.

22. Mr. Acosta and Mr. Diego refused even to consider Plaintiff's request and told him that he was expected to complete whatever jobs they assigned him without any complaints.

23. During the same meeting, Mr. Acosta and Mr. Diego indicated to Plaintiff that his work performance was fine.

Reprisal after Plaintiff complained to Phelps' Human Resources Department

24. As a result of the disparate treatment described above, on August 10, 2022, Plaintiff went to Phelps Hospital's Human Resources Department ("HR") and complained that he was being treated differently, and less favorably, than his coworkers (who were all non-African-American) by Mr. Acosta, Mr. Diego, and Mario Pensabene ("Mr. Pensabene").

25. While meeting with the Human Resources Department and recounting the disparate and discriminatory treatment he was experiencing, Plaintiff had a severe panic attack which led to him being medically examined, diagnosed, and treated in the Emergency Room.

26. Almost immediately (within 24 hours) after Plaintiff brought the above-referenced complaints to the attention of Phelps's HR Department, he was retaliated against.

27. On August 11, 2022, Plaintiff received a notice from HR that Mr. Acosta would be completing Plaintiff's performance evaluation, rather than his immediate supervisor, Melanie Lopez.  No reason for this was given to Plaintiff, since Melanie was the person who regularly observed Plaintiff's work performance during most of his shift, whereas Mr. Acosta's shift overlapped only two hours with that of the Plaintiff.

28. Specifically, Mr. Acosta's shift ended at 5:00 p.m., and Plaintiff's shift was from 3:00pm to 11:00 p.m. Melanie had the same shift as Plaintiff.

29. Mr. Acosta gave Plaintiff a negative performance review (despite stating that Plaintiff's work performance was not an issue in their meeting a week earlier).

30. Phelps management extended Plaintiff's probationary period by 30 days, purportedly to evaluate "performance [and] behavior" issues.

31. Plaintiff believes the "behavior" issues Defendants intended to examine were Plaintiff's complaints of unlawful discrimination and reprisal.  *See*, "Introductory Perf Review of

4

Aug. 2022"

32. This negative performance evaluation and extension of Plaintiff's probationary period caused Plaintiff distress and increased his anxiety.

33. On August 18, 2022, Plaintiff filed a complaint with the New York State Divisions of Human Rights, Case No. 0219636(cross-filed with the U.S. EEOC--Charge No. 16GC204040) charging Phelps Hospital, Mr. Acosta, and Mr. Pensabene with racial discrimination and retaliation.

34. On August 25, 2022, while at work, Plaintiff was feeling very anxious and as if he was going to have a panic attack due to the arduous workload and hostile work environment.

35. Plaintiff asked supervisor Mr. Diego if he could have a different, less arduous assignment as he wasn't feeling well.

36. Supervisor Mr. Diego stated "No," even though he was aware of Plaintiff's psychological disability (e.g., because of Plaintiff's prior panic attack and ER visit).  Mr. Diego refused to discuss with Plaintiff his apparent need for a reasonable accommodation of his obvious disabling condition (his experiencing panic attacks when placed under undue stress caused by the racial discrimination).

37. The next day, August 26, 2022, Plaintiff once again was having anxiety and panic attack symptoms, i.e., shaking, chest pain, sweating, breathing problems, and obvious stress.

38. Once again Plaintiff asked supervisor Mr. Diego if he could be allowed a less arduous assignment because he was experiencing anxiety.

39. Supervisor Mr. Diego merely stated: "Everybody's got their area.  You got your area."

40. Plaintiff again ended up in the Emergency Room, as he was experiencing another

5

panic attack.  This was almost immediately after Defendants' managers refused to engage in any dialog with Plaintiff regarding his need for a reasonable accommodation.

41. On August 29, 2022, Plaintiff filed a report with Northwell Health's "Ethicspoint" regarding the disparate treatment and harassment that he was experiencing at the hands of supervisors Mr. Diego, Mr. Acosta and Mr. Pensabene.

42. If a Phelps Hospital employee believed he or she was being unlawfully discriminated against, it was proper protocol to bring this to Northwell Health's attention.

43. This would properly be reported through a submission to Northwell Health's "Ethicspoint" system.

44. Northwell Health handles ethics and claims of discrimination from Phelps Hospital employees.

45. On September 9, 2022, Plaintiff reported supervisor Mr. Diego's dismissive, discriminatory, non-communicative and retaliatory behavior to supervisor Mr. Acosta.

46. In Plaintiff's presence, Mr. Acosta told another housekeeping supervisor to close the door on Plaintiff's face.

47. Plaintiff was humiliated by this.

48. Plaintiff added the details of this incident to the report he filed with Northwell Health.

49. On September 12 and September 13, 2022, Mr. Diego snuck up and purposefully startled Plaintiff, causing stress and anxiety in Plaintiff and almost causing him to have another panic attack.

50. On September 18, 2022, around 8:30 p.m., Mr. Diego approached Plaintiff, who was on the fifth floor in the Intensive Care Unit waiting room taking his break, to tell him about an extra assignment that Mr. Diego asked Plaintiff to complete after his break.

6

51. About an hour later, at 9:30 p.m., Mr. Diego informed Plaintiff that Plaintiff cannot have breaks in the Intensive Care lounge.

52. Plaintiff was informed that he could not take his break in the Intensive Care lounge even though visiting hours were over and this was the area Plaintiff had been assigned to clean. This made no sense, as walking to a distant break room to take a 15-minute break would consume the allotted break time.

53. A reasonable inference can be drawn from the above that Mr. Diego was harassing Plaintiff due to discriminatory animus and retaliatory purposes.

54. On September 14, 2022, Plaintiff had a meeting with Kevin Cepelak, of Northwell Health, to discuss the Ethicspoint report Plaintiff filed with Northwell Health.

55. Barry Surrett, who is a Union Representative, was also present.

56. Sometime in late September/early October 2022, Plaintiff and Mr. Surrett also had a meeting with Director Mario and Jeff Meate to discuss Plaintiff's probationary status, as the 30-day extension of Plaintiff's original probation had expired.

57. Mr. Pensabene and Jeff Meate said they could not answer the question of whether or not Plaintiff was still on probation, as they indicated that would have to be answered by HR and corporate.

58. Plaintiff expressed his desire to open a line of communication and move forward in some proper and productive manner.

59. However, Mr. Diego continued his discriminatory and retaliatory behavior toward Plaintiff, including continuing to assigning him extra work and arduous work.

60. On October 19, 2022, Plaintiff asked to move to a different shift, and even a different department, so that he did not have to work with supervisor Mr. Diego.

7

61. Plaintiff's requests were ignored.

62. On October 26, 2022, Plaintiff had another panic attack due to supervisor Mr. Diego's continuing retaliatory harassment and his creation of a hostile work environment.

63. Plaintiff visited and was treated at the Emergency Room for the panic attack.

64. The doctor who treated Plaintiff, Dr. Ali Khameinei, recommended that Plaintiff stay home from work for five days and not return until Monday, October 31, 2022.

65. A few days after Plaintiff returned to work, the discrimination against Plaintiff became physically abusive.

66. Specifically, on or about November 2, 2022, Plaintiff was discriminatorily and retaliatorily told by supervisor Mr. Diego to "load up the laundry cart."

67. This was work that was not within Plaintiff's job description and was also work that was properly performed by personnel from the laundry Department.

68. Plaintiff objected that this was not work that he should be assigned to do, yet he was directed to perform this work, and to do so without any assistance from others.

69. This work involved loading between 40 and 50 heavy bags of laundry, weighing approximately 40 pounds per bag.

70. As a consequence of this order, Plaintiff suffered physical injury to his back which ultimately forced him out of work by creating a disability requiring back surgery.

71. As of the date of filing of this complaint, Plaintiff remains out on Worker's Compensation leave.  He needs a walker or a cane to walk.

72. After injuring his back with the laundry bag marathon, Plaintiff has been diagnosed with depression and PTSD.

73. Defendants have created a subjectively and objectively hostile work environment that

8

Plaintiff should not be required to return to, absent corrective action, after he is physically able to return to work.

74. Defendants' actions, through its HR Department and supervisors, involve intentional discrimination and reprisal directed at Plaintiff for the purpose, it appears, of eliminating him from the workplace.

75. Other African American employees in Plaintiff's department have also reported being treated less favorably than their non-African American employees.

76. Like Plaintiff, they have reported being given more arduous jobs and having to do laundry duty, even though that is not part of their job description.

77. Furthermore, when such employees have complained about doing this extra work, their concerns were not addressed, and they have faced continued discrimination.

<u>Northwell Health is Plaintiff's actual employer, or alternatively, a joint employer</u>

78. Northwell Health took over control of Phelps Hospital in or after 2019.

79. Phelps Hospital employees are directed to Northwell Health regarding employment issues such as complaints of discrimination.

80. Phelps Hospital employees in jobs such as Plaintiff's are not expressly informed that their employer is "Phelps Memorial Hospital Association."

81. Phelps Memorial Hospital Association was not Plaintiff's actual employer, but rather Northwell Health is.

82. Alternatively, Defendants are joint enterprises, joint employers and/or integrated employers, with regard to Plaintiff's employment.

83. 2.   Northwell and Phelps are, and have been, jointly responsible for Human Resources at the Phelps Memorial Hospital.

84. Upon information and belief, Northwell reviews, and is part of the decision-making process, regarding personnel actions undertaken by Phelps Memorial Hospital Association which involve complaints of unlawful discrimination made to Northwell Health by a Phelps Hospital employee.

"Right to Sue" Letter

85. Plaintiff has filed a timely charge of race discrimination with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC by letter dated August 8, 2023, a copy of which is attached hereto as Exhibit "1".

**FIRST CLAIM FOR RELIEF—**
**RACE DISCRIMINATION**
**IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e**

86. Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

87. Plaintiff is an African American man who performed his job well but who was discriminated against on the basis of his race and the psychological disabilities that resulted from the race discrimination and reprisal.

88. Defendant's justification for taking an adverse job action against plaintiff was pretextual and a sham.

89. As a proximate result of defendants' actions, Plaintiff has suffered and continues to suffer lost compensation, severe and lasting embarrassment, humiliation, mental distress and anguish, and other incidental and consequential damages and expenses.

90. Plaintiff has been damaged thereby.

91. The conduct of defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights,

10

entitling Plaintiff to an award of punitive damages.

## SECOND CLAIM FOR RELIEF—
### RACIAL DISCRIMINATION IN PLAINTIFF'S EMPLOYMENT
### IN VIOLATION OF THE CIVIL RIGHTS ACT of 1866, 42 U.S.C. § 1981

92. Plaintiff repeats and reiterates each of the allegations above as if fully repeated here at length.

93. The Civil Rights Act of 1866, 42 U.S.C. § 1981, protects individuals from employment discrimination based upon race.

94. Plaintiff is a non-white man discriminated against in the terms and conditions of his employment contract with Defendants on account of his race.

95. As a proximate result of defendants' actions, Plaintiff has suffered and continues to suffer lost compensation, severe and lasting embarrassment, humiliation, mental distress and anguish, and other incidental and consequential damages and expenses.

96. Plaintiff has been damaged thereby.

97. The conduct of defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## THIRD CLAIM FOR RELIEF—
### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT of 1990
(42 U.S.C. § 12101 et. seq.)

98. Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

99. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., enforceable under 28 U.S.C. § 1331 and 1343(4), protects individuals from employment discrimination based upon physical or mental disability, or being perceived or having a record of such disability.

100.    Plaintiff developed psychological disabilities, namely, major anxiety and panic attacks, when Defendants' racial discrimination and reprisal caused him undue stress.

101.    Defendants repeatedly failed to engage in any interactive process with Plaintiff regarding his request to be reasonably accommodated regarding his above-referenced disabilities (e.g., relocated him to a non-hostile and non-retaliatory work location and/or ceasing Defendants' racially discriminatory and retaliatory actions.)

102.    Plaintiff's employment has essentially been constructively terminated by Defendants' refusal to provide the above-mentioned or similar reasonable accommodations.

103.    As a proximate result of Defendants' discrimination and reprisal against Plaintiff on the basis of his disability, or record of disability and/or Defendants' perception of disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings caused by his current status, and other employment benefits.

104.    As a further proximate result of defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by defendants.

105.    As a further proximate result of defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

106.    The conduct of defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF—
RETALIATION IN VIOLATION OF
42 U.S.C. § 2000e, 42 U.S.C. § 1981 and the ADA**

107.    Plaintiff repeats and reiterates each of the allegations above as if fully repeated

here at length.

108.    Plaintiff reported and objected to unlawful discrimination against Plaintiff and others, and had an objective and reasonable belief that defendant was engaged in conduct unlawful under Title VII and § 1981.

109.    Plaintiff opposed such unlawful conduct by making good faith claims or complaints of discrimination to defendant.

110.    As a consequence of Plaintiff's report, defendant engaged in retaliatory adverse treatment of Plaintiff.

111.    As a proximate result of defendants' retaliatory behavior against Plaintiff, Plaintiff has suffered and continues to suffer a loss in wages and other employment benefits, such as the ability to join the Union and receive the protections that come therewith, due to be placed on an indefinite probationary period.

112.    As a further proximate result of defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental distress and anguish, and other incidental and consequential damages and expenses.

113.    Plaintiff was damaged thereby.

114.    The conduct of defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

### FIFTH CLAIM FOR RELIEF—
### SUPPLEMENTAL NEW YORK CIVIL RIGHTS' CLAIMS

115.    Plaintiff repeats and realleges each of the allegations above as if fully repeated here at length.

116.    Defendant's disparate treatment of Plaintiff on the basis of his race was in

violation of the New York State Human Rights Law.  *See*, N.Y.S. Exec. Law s. 296 *et seq*.

117.    After Plaintiff cross-filed a complaint of discrimination with the N.Y.S. DHR and the US EEOC, Defendant continued to discriminate against him and also retaliated against him.

118.     Plaintiff also suffered from physical and psychological disabilities that he brought to the attention of Phelps' management and HR, including his need to be reasonably accommodated regarding these.

119.    Defendants refused to engage in any interactive dialogue with Plaintiff regarding his disabilities and perceived disabilities, but instead retaliated against Plaintiff because of these.

120.    Defendants discriminated against Plaintiff on account of his disability, perceived disability and record of disability, and retaliated against him for seeking a reasonable accommodation, and did so both before and after Plaintiff initially complained to the N.Y.S. DHR about unlawful discrimination.

121.    Plaintiff was damaged thereby.

### SIXTH CLAIM FOR RELIEF— SUPPLEMENTAL NEW YORK LABOR LAW

122.    Plaintiff repeats and realleges each of the allegations above as if fully repeated here at length.

123.    Defendants denied Plaintiff the amount of time for meals and breaks that he was entitled to under the N.Y.S. Labor Law.

124.    Plaintiff was damaged thereby.

**JURY DEMAND**

Plaintiff requests trial by jury in this action.

WHEREFORE, Plaintiff prays that this Court grant judgment in Plaintiff's favor

containing the following relief:

1. An award of Plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including back pay, and also an award of back pay and front pay compensating Plaintiff for loss of past and future salary and benefits;

2. An award of damages to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3. An award of punitive damages;

4. An order enjoining defendants from engaging in the wrongful practices alleged herein, and to enjoined from terminating Plaintiff's employment;

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Such other and further relief as this Court may deem just and proper.

Dated:  Stony Point, New York
        November 6, 2023

/S /

_____
MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff   MD 2097*
Diederich Law Office
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com

Attachment
  Exhibit "1" – Notice of Right to Sue

15

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/08/2023

**To:** Vincent Artis
27 Washington Avenue
1st Floor
Sloatsburg, NY 10974

Charge No: 16G-2022-04040

EEOC Representative and email:    TIMOTHY RIERA
Deputy Director
TIMOTHY.RIERA@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
08/08/2023
_____
Timothy Riera
Acting District Director

Complaint Exhibit "1"

**Cc:  Phelps Memorial Hospital**
     **Attn: Legal Unit**
     **701 North Broadway**
     **Sleepy Hollow NY 10591**

Please retain this notice for your records.