UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

VINCENT ARTIS,

                     *Plaintiff*,

       v.

PHELPS MEMORIAL HOSPITAL
ASSOCIATION, *and*
NORTHWELL HEALTH,

                     *Defendants*.

</td><td>

No. 23-CV-9827 (KMK)

ORDER & OPINION

</td></tr>
</table>

Appearances:

Vincent Artis
Sloatsburg, NY
*Pro se Plaintiff*

Eric David Raphan, Esq.
Jonathan Stoler, Esq.
Katerina Rose Mantell, Esq.
Maria Alejandra Gomez, Esq.
Sheppard, Mullin, Richter & Hampton LLP
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Vincent Artis ("Plaintiff"), proceeding pro se, brings this Action against Phelps Memorial

Hospital Association ("Phelps Hospital") and Northwell Health ("Northwell") (together,

"Defendants"), alleging race discrimination and retaliation in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e et seq., Section 1981 of the 1866 Civil Rights

Act ("Section 1981"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

Law §§ 290 et seq., disability discrimination and retaliation in violation of the Americans with

Disabilities Act of 1993 ("ADA"), 42 U.S.C. § 12101 et seq., and violations of New York Labor

Law ("NYLL") § 162 ("Section 162").  (*See generally* Compl. (Dkt. No. 1).)  Before the Court is

Defendants' Motion to Dismiss (the "Motion").  (*See* Not. of Mot. (Dkt. No. 25).)  For the

reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings

themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule

12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*,

No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted)

(quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y.

2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by

reference in the Complaint, and matters of which judicial notice may be taken, would not convert

the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th

463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss,"

courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint

by reference, and matters of which a court may take judicial notice" (internal quotation marks

and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a

Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial

notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir.

1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a] defendant['s] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Because Plaintiff is proceeding pro se, the Court will consider the documents attached to his Opposition. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum). Defendants also attaches documents to their briefing, including Plaintiff's New York State Division of Human Rights ("NYSDHR") complaint, (Decl. of Eric Raphan ("Raphan Decl."), Ex. A ("NYSDHR Compl.") (Dkt. No. 27-1)), NYSDHR's final investigation report, (*id.*, Ex. B ("NYSDHR Rpt.") (Dkt. No. 27-2)), NYSDHR's determination and order, (*id.*, Ex. D ("NYSDHR Determination") (Dkt. No. 27-4)). The Court may take judicial notice of the NYSDHR Complaint because Plaintiff drafted the complaint and relied upon it in bringing suit, and of the NYSDHR Report and Determination because they are "records of state administrative procedures." *Murphy v. Rodriguez*, No. 23-CV-

6998, 2024 WL 4290723, at *2 (S.D.N.Y. Sept. 25, 2024) (quoting *Moor v. Fischer*, No. 10-CV-4038, 2011 WL 2988527, at *2, 4 (S.D.N.Y. July 22, 2011)).  The Court notes that it may consider these documents for the fact that they exist, but not for the truth of the matters asserted therein.  *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), *appeal withdrawn*, No. 21-1245, 2021 WL 3575023 (2d Cir. June 23, 2021).

B.  Factual Background

The following facts are drawn from the Complaint and additional materials as discussed above and are assumed true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Phelps Hospital is a hospital owned by Northwell since approximately 2019.  (Compl. ¶¶ 2–3, 78.)  Plaintiff is a 57-year-old Black man who began working at Phelps Hospital in May 2022 as an Environmental Services Attendant on a three-month probationary status.  (*Id.* ¶¶ 7–9.)  Plaintiff was initially not written up or given any warnings and received a positive review in July 2022 from his immediate supervisor, Melanie Lopez ("Lopez").  (*Id.* ¶¶ 11–12.)  Upon successful completion of his probation, Plaintiff would be able to join the relevant local union and receive a pay increase and other unspecified benefits.  (*Id.* ¶ 10.)

Beginning in late June 2022, Plaintiff observed he was treated less favorably than his non-Black colleagues.  (*Id.* ¶ 13.)[1]  For example, Plaintiff was assigned to clean the lab and entire MRI room alone, a task that was usually assigned to two people.  (*Id.* ¶¶ 15–16.)  Plaintiff

---

[1] Plaintiff alleges that other Black employees "in Plaintiff's department have also reported being treated less favorable than their non-[Black] employees."  (Compl. ¶ 75.)

was regularly required to "handle two to three times the workload of his non-[B]lack coworkers." (*Id.* ¶ 19.)  In order to complete his assigned tasks, Plaintiff was "prevented from taking any [allotted] 15-minute break or taking more than a 30-minute mid-shift break." (*Id.* ¶ 20.)  On or about August 3, 2022, Plaintiff met with two of his supervisors, Diego Cardillo ("Cardillo"), who is white, and Antonio Acosta ("Acosta"), who is white and Hispanic, to ask for "more reasonable assignments, so that he could get a break from doing the larger, more arduous tasks." (*Id.* ¶ 21.)  Cardillo and Acosta refused to consider Plaintiff's requests and "told him that he was expected to complete whatever jobs they assigned to him without any complaints" and that "his work performance was fine." (*Id.* ¶¶ 22–23.)

On August 10, 2022, Plaintiff experienced a severe panic attack when he met with Phelps Hospital's Human Resources Department ("HR") to complain he was being treated less favorably than non-Black coworkers by Acosta, Cardillo, and Mario Pensabene ("Pensabene"). (*Id.* ¶¶ 24–25.)  Plaintiff was examined, diagnosed, and treated in the Phelps Hospital Emergency Room ("ER") as a result of his panic attack. (*Id.* ¶ 25.)  On August 11, 2022, Plaintiff was notified that Acosta, not Lopez, would complete his performance valuation. (*Id.* ¶ 27.)  Lopez and Plaintiff worked the same shift, 3:00 PM to 11:00 PM, whereas Acosta's shift ended at 5:00 PM. (*Id.* ¶ 28.)  At an unspecified date, Acosta gave Plaintiff a negative performance review, resulting in the extension of Plaintiff's probationary period by 30 days. (*Id.* ¶¶ 29–30.)  The negative review "caused Plaintiff distress and increased his anxiety." (*Id.* ¶ 32.)

On August 18, 2022, Plaintiff filed a complaint with NYSDHR, which was also cross-filed with the Equal Employment Opportunity Commission ("EEOC"), charging Phelps Hospital, Acosta, and Pensabene with racial discrimination and retaliation. (*Id.* ¶ 33.)  On August 25, 2022, Plaintiff felt anxious and that he may have a panic attack "due to the arduous workload and

hostile work environment." (*Id.* ¶ 34.) Cardillo denied Plaintiff's request for a different, less arduous assignment because he wasn't feeling well, despite Cardillo's awareness of Plaintiff's "psychological disability," i.e., "Plaintiff's prior panic attack and ER visit." (*Id.* ¶¶ 35–36.) On August 26, 2022, Plaintiff again felt anxious and felt the symptoms of a panic attack, i.e., "shaking, chest pain, sweating, breathing problems, and obvious stress." (*Id.* ¶ 37.) Cardillo again denied Plaintiff's request for "a less arduous assignment because he was experiencing anxiety," (*id.* ¶ 38); Cardillo said in response, "Everybody's got their area. You got your area," (*id.* ¶ 39). Plaintiff again "ended up in the [ER], as he was experiencing another panic attack." (*Id.* ¶ 40.)

On August 29, 2022, Plaintiff filed, in accordance with Phelps Hospital policy, an internal report using Northwell's "Ethicspoint" platform regarding discrimination and harassment he experienced at the hands of Cardillo, Acosta, and Pensabene. (*Id.* ¶¶ 41–44.) When, on September 9, 2022, Plaintiff reported Cardillo's behavior to Acosta, Acosta told another employee to "close the door on Plaintiff's face," thereby humiliating Plaintiff. (*Id.* ¶¶ 45–47.) Plaintiff added this incident to his report to Northwell. (*Id.* ¶ 48.)

On September 12 and 13, 2022, Cardillo "snuck up [on] and purposefully startled Plaintiff," almost causing him to have another panic attack. (*Id.* ¶ 49.) On September 14, 2022, Plaintiff met with a Northwell employee, Kevin Cepelak, and a union representative, Barry Surrett ("Surrett"), to discuss Plaintiff's Ethicspoint report. (*Id.* ¶¶ 54–55.) On September 18, 2022, around 8:30 PM, Cardillo met Plaintiff, who was on his break in the Intensive Care Unit ("ICU") lounge or waiting room and assigned him additional work. (*Id.* ¶ 50.) An hour later, Cardillo informed Plaintiff that he was not allowed to take his breaks in the ICU lounge, "even though visiting hours were over and . . . Plaintiff had been assigned to clean [the ICU lounge]"—

instead, Plaintiff would have to "walk[] to a distant break room," which "would consume the allotted break time." (*Id.* ¶ 52.) In late September or early October, Pensabene told Plaintiff and Surrett that whether Plaintiff was still on probation was a question "to be answered by HR and corporate." (*Id.* ¶¶ 56–57.)

On October 19, 2022, Plaintiff made a request, which was ignored, that he be moved to a different shift and/or department so that he did not have to work with Cardillo. (*Id.* ¶¶ 60–61.) On October 26, 2022, Plaintiff had another panic attack due to Cardillo's behavior and was treated in the ER, where a doctor recommended that Plaintiff stay home until October 31, 2022, which he did. (*Id.* ¶¶ 62–64.) On November 2, 2022, Cardillo directed Plaintiff to "load up the laundry cart," a task that was not within Plaintiff's job description and to which Plaintiff objected. (*Id.* ¶¶ 66–68.) The laundry task injured Plaintiff's back and "creat[ed] a disability requiring back surgery." (*Id.* ¶ 70.) As a result, Plaintiff was out on worker's compensation through at least November 6, 2023. (*Id.* ¶ 71.)

A NYSDHR investigator interviewed Plaintiff twice in January 2023. (*See* NYSDHR Rpt. 3.) In May 2023, NYSDHR found no probable cause to support race discrimination and retaliation. (*See generally* NYSDHR Determination.) On August 8, 2023, the EEOC adopted NYSDHR's determination and issued a right to sue notice. (*Id.* ¶ 85; *see also* Compl., Ex. 1 ("EEOC Notice").)

C. Procedural Background

On November 6, 2023, Plaintiff initiated this Action. (*See* Compl.) Plaintiff was initially counseled, (*see generally* Dkt.), but his counsel withdrew on January 31, 2024, (*see* Dkt. Nos. 17–18). On February 22, 2024, Plaintiff applied for leave to proceed in forma pauperis ("IFP"), or without prepayment of fees, (Dkt. No. 19), and requested pro bono counsel, (Dkt.

7

No. 21).  On March 26, 2024, the Court granted Plaintiff IFP status, (Dkt. No. 22), and denied without prejudice his request for pro bono counsel, (Dkt. No. 23).  On June 12, 2024, the Court set a briefing schedule.  (Dkt. No. 24.)

Pursuant to that schedule, Defendants filed their Motion and accompanying briefing on July 3, 2024.  (*See* Not. of Mot.; Defs' Mem. in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 26); Raphan Decl. (Dkt. No. 27).)  On August 19, 2024, Plaintiff his Opposition.  (*See* Pl's Mem. in Opp. of Mot. ("Pl's Opp.") (Dkt. No. 31).)  On September 11, 2024, Defendants filed their Reply.  (*See* Defs' Reply in Supp. of Mot. ("Defs' Reply") (Dkt. No. 35); Suppl. Aff. of Eric Raphan ("Suppl. Raphan Aff.") (Dkt. No. 36).)

On August 20, 2024, Plaintiff filed a motion requesting leave to amend his Complaint. (*See* Dkt. Nos. 32–33.)  On August 28, 2024, the Court directed Plaintiff to provide Defendants with all materials relied upon in support of his motion to amend by September 13, 2024.  (Dkt. No. 34.)  Plaintiff did not comply.  (*See generally* Dkt.)  On September 26, 2024, Defendants filed their Opposition to Plaintiff's Motion to Amend.  (Defs' Mem. in Opp. to Mot. ("Defs' Opp.") (Dkt. No. 40).)  After an extension, Plaintiff filed his Reply.  (Pl's Reply in Supp. of Mot. ("Pl's Reply") (Dkt. No. 45).)  After letters back and forth between the Parties concerning a USB stick containing materials Plaintiff relies upon in support of his motion to amend, on December 2, 2024, the Court mailed the USB stick to Defendants and directed Defendants to alert the Court of any deficiencies in those materials by December 16, 2024.  (Dkt. No. 53.)  On December 16, 2024, Defendants filed a letter pursuant to the Court's order.  (Dkt. No. 54.)  Plaintiff filed four letters in response between December 26 and December 30, 2024.  (*See* Dkt. Nos. 58–61.)

## II.  Motion to Dismiss

### A.  Standard of Review

#### 1.  12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211 F.3d at 700–01).  "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2008); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

#### 2.  12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)); *Medina v. AAM 15 Mgmt. LLC*, --- F. Supp. 3d ----, 2024 WL 4307816, at *6 (S.D.N.Y. Sept. 26, 2024) (same).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Gamboa v. Regeneron Pharms., Inc.*, 719 F. Supp. 3d 349, 352 (S.D.N.Y. Feb. 27, 2024) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret it to raise the strongest arguments that it suggests." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis[2]

    1.  Northwell Health

Defendants argue that claims for Title VII race discrimination and retaliation and ADA disability discrimination and retaliation should be dismissed as against Northwell because Plaintiff failed to name Northwell in his NYSDHR Complaint and EEOC Charge.  (*See* Defs' Mem. 11–14.)  Plaintiff responds that it was unnecessary to name Northwell in his NYSDHR and EEOC complaints, that Northwell was on notice, and that Northwell and Phelps Hospital are intertwined.  (Pl's Opp. 9.)

"Under Title VII and the ADA, 'a claimant may bring suit in federal court only if []he has filed a timely complaint with the EEOC and obtained a right-to-sue letter.'"  *Rivers v. Int'l House of Pancakes*, No. 20-CV-2471, 2021 WL 860590, at *3 (S.D.N.Y. Mar. 8, 2021) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001), and citing 42 U.S.C. § 2000e-5(e) and 42 U.S.C. § 12117(a)).  This requirement "applies to each defendant individually, and is not satisfied with respect to one defendant by filing an administrative charge naming another."  *United States v. Episcopal Health Servs., Inc.*, No. 11-CV-6259, 2015 WL 12645525, at *7 (E.D.N.Y. July 13, 2015) (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)).  By requiring plaintiffs to file a charge of discrimination naming each defendant, Title VII and the ADA ensure that defendants have "adequate notice of the claims and an opportunity

_____

[2] The Court notes that Plaintiff, via counsel, withdrew his ADA and NYLL claims in response to Defendants' pre-motion letter.  (*See* Dkt. No. 12 at 2–3.)  In his Opposition, Plaintiff, now proceeding pro se, argues that his ADA and NYLL claims should not be dismissed.  (*See* Pl's Opp. 10–11, 13–14.)  Defendants argue that Plaintiff should not be allowed to backtrack on this withdrawal, (*see* Defs' Mem. 10, 24), but still make substantive arguments as to why these claims should be dismissed, (*see id.* 15–17, 24).  Given the solicitude afforded pro se plaintiffs, *cf. Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022), the Court will not deem Plaintiff's ADA and NYLL claims withdrawn.

to voluntarily comply," *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 389 (S.D.N.Y. 2002), "without the need for recourse to the courts," *Rivers*, 2021 WL 860590, at *3 (same).

There are two exceptions to the general requirement for a plaintiff to name a defendant in his EEOC Charge:  (1) if there is an "identity of interest" between the named and unnamed parties in the EEOC Charge, *see Johnson*, 931 F.2d at 209, and (2) if the defendant was named in the body of the charge as having played a role in the discrimination, *see Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d at 311.  The second exception does not apply because Plaintiff did not name Northwell in the body of his charge.  (*See generally* NYSDHR Complaint.)  In assessing whether the identity of interest exception applies, the Court weighs four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Zaki v. OTG Mgmt. LLC*, No. 23-CV-8189, 2024 WL 5294261, at *4 (E.D.N.Y. Oct. 23, 2024) (quoting *Johnson*, 931 F.2d at 209–10), *report and recommendation adopted*, 2024 WL 5198706 (E.D.N.Y. Dec. 23, 2024); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (restating the same four factor test).  The exception is also "often restricted . . . to plaintiffs who filed their EEOC charges pro se or with a lawyer inexperienced in Title VII or ADA litigation."  *Rivers*, 2021 WL 860590, at *4 (alteration adopted) (italics, citation, and quotation marks omitted).  This test "is 'not a mechanical one, and no single factor is dispositive.'"  *Parlato v. Town of E. Haven*, No. 22-CV-1094, 2023 WL 5206873, at *7 (D. Conn. Aug. 14,

2023) (quoting *Zustovich v. Harvard Maint., Inc.*, No. 08-CV-6856, 2009 WL 735062, at *8 (S.D.N.Y. Mar. 20, 2009)).  Courts also consider whether the unnamed party had "notice of the allegations of the administrative complaint," either as an "implied . . . fifth factor" or "as part of the third factor."  *Id.* (first quoting *Zustovich*, 2009 WL 735062, at *8, and then citing *Tarr v. Credit Suisse Asset Mgmt., Inc.*, 958 F. Supp. 785, 795 (E.D.N.Y. 1997), and *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 214 (N.D.N.Y. 2013)).

The first factor weighs against finding identity of interest, as Plaintiff concedes that "Northwell could have been identified as a relevant party when the EEOC complaint was filed." (Pl's Opp. 9.)  *See Parlato*, 2023 WL 5206873, at *8 (finding that this factor weighed against the exception where plaintiff "acknowledge[d] that there is no reason she could not have named the [unnamed entity] . . . in the administrative complaint"); *United States v. Epsicopal Health Servs., Inc.*, No. 11-CV-6259, 2015 WL 12645525, at *8 (E.D.N.Y. July 13, 2015) (finding the first favor cut against identity of interest where "[p]laintiff does not contend that she did not know of, or could not have learned about, any role she now attributes to [the unnamed entity] before filing her administrative complaint"), *report and recommendation adopted sub nom. United States v. Episcopal Health Servs., Inc.*, 2016 WL 748012 (E.D.N.Y. Jan. 7, 2016).

The second factor considers whether the interests of Phelps Hospital are so similar to that of Northwell that it would be unnecessary to include Northwell in Plaintiff's EEOC Charge.  At a superficial level, it is not clear that Phelps Hospital's interests are so similar to Northwell's such that it was unnecessary to include Northwell in the EEOC Charge.  Indeed, Northwell, "if named, may have been able to establish that it was not [Plaintiff's] employer and had no liability."  *Caesar v. Interoute Telecomms., Inc.*, No. 00-CV-8629, 2001 WL 648946, at *2 (S.D.N.Y. June 12, 2001).  This factor, however, does not require "a unity of all possible

interests between" Phelps Hospital and Northwell, *Senecal*, 976 F. Supp. 2d at 224; rather, "[t]he factor only deals with the parties' interests that relate to 'obtaining voluntary conciliation and compliance,'" *id.* (quoting *Johnson*, 931 F.2d at 209–10). Here, Northwell owns Phelps Hospital. (*See* Compl. ¶¶ 2–3, 78.) Plaintiff alleges that Northwell and Phelps Hospital are "jointly responsible for [HR] at [Phelps Hospital]." (*Id.* ¶ 83.) To wit, Plaintiff attaches to his Opposition an email acknowledging a job offer for Environmental Services Attendant from Northwell, (*see* Pl's Opp. 16), and alleges that Phelps Hospital employees are "directed to Northwell . . . regarding employment issues such as complaints of discrimination," (Compl. ¶ 79), that internal complaints of discrimination must be submitted through Northwell's "Ethicspoint" system, (*see id.* ¶¶ 41–44), and that Plaintiff met with a Northwell employee to discuss his internal complaint, (*see id.* ¶ 54). This is enough for this factor to lean in Plaintiff's favor. *Cf. Bolt v. Planned Parenthood of Cent. & W. New York*, No. 24-CV-6061, 2025 WL 368643, at *5 (W.D.N.Y. Feb. 3, 2025) (noting that this factor considers whether entities are "closely intertwined, especially with respect to *employment matters and administrative procedures*." (emphasis added)); *see also Batiste v. City Univ. of New York*, No. 16-CV-3358, 2017 WL 2912525, at *4 (S.D.N.Y. July 7, 2017) (finding identity of interest where employees of the named and unnamed entities had "joint involvement in [p]laintiff's termination," thereby establishing "a commonality of interests" (citation and quotation marks omitted)). While Defendants argue this factor weighs in their favor, their cited cases are inapposite.[3] Finally, joint

---

[3] Plaintiff alleges a relationship between Phelps Hospital and Northwell that suggests their interests are aligned, *cf. Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 408–09 (W.D.N.Y. 2022) (finding the second factor did not weigh in favor of identity of interest where "there are no allegations in [p]laintiff's complaint suggesting that the interests of the [unnamed entity] and [named entity] are so aligned that it would be unnecessary to include them in the EEOC proceedings . . . ."); *Ruiz v. New Avon LLC*, No. 18-CV-9033, 2019 WL 4601847, at *12

legal counsel between the named and unnamed entities, as is the case here, also weighs in favor of finding similar interests. *See Hanley v. Chicago Title Ins. Co.*, No. 12-CV-4418, 2013 WL 3192174, at *5 (S.D.N.Y. June 24, 2013) (finding the fact of joint counsel weighed in favor of identity of interest); *Goyette v. DCA Advert. Inc.*, 830 F. Supp. 737, 748 (S.D.N.Y. 1993) (same).

The third factor is largely neutral because, while neither Party "has indicated that there was an EEOC hearing or proceeding and that [Northwell's] omission from the EEOC Charge resulted in any prejudice," *Gokdogan v. Slap Shot Pizza Enters. Ltd.*, No. 20-CV-5201, 2021 WL 4441417, at *10 (E.D.N.Y. Sept. 27, 2021) (collecting cases), it is unclear whether Northwell received notice of the EEOC Charge prior to the issuance of the right-to-sue letter, which makes it "unclear whether [the third] factor weighs in favor of applying the exception," *Innes v. County of Warren*, No. 22-CV-641, 2023 WL 3601237, at *6 (N.D.N.Y. May 23, 2023).

The fourth factor weighs in Plaintiff's favor. Plaintiff alleges that internal reports of discrimination must be submitted through Northwell's "Ethicspoint" system, (*see* Compl. ¶¶ 41–44), and includes documents related to his employment offer that name Northwell, (*see* Pl's Opp. 16 (an undated email "extend[ing] an offer for [Plaintiff] to join the Northwell Health team as an

---

(S.D.N.Y. Sept. 22, 2019) (finding the second factor did not weigh in favor of identity of interest because "[t]he [c]omplaint is almost entirely devoid of allegations addressing the relationship between [unnamed entity] and [named entity]"); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *10 (S.D.N.Y. July 9, 2013) (finding the second factor did not weigh in favor of identity of interest where "the interests of [named entity] are undoubtedly distinct from [unnamed entity]" and "there are no allegations that any [unnamed entity defendant] represented to [plaintiff] that any relationship they might have with her was to be through [the named entity]"), *report and recommendation adopted as modified*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); and Phelps Hospital and Northwell are not in a franchisor-franchisee relationship, *cf. Rivers*, 2021 WL 860590, at *4 (finding the second factor did not weigh in favor of identity of interest where plaintiff named the franchisor but not franchisee and where "[named entity] and [unnamed entity] are not commonly controlled and do not share liability for the alleged discrimination[] and [unnamed entity] never suggested that [p]laintiff's relationship with it should be channeled through [named entity]").

Environmental Services Attendant").  At the very least, these allegations make it plausible that Plaintiff's relationship with Northwell is mediated through Phelps Hospital.

In sum, two factors weigh in favor of finding identity of interest, one does not, and one is neutral.  As the weight is in Plaintiff's favor, the Court finds there is a sufficient identity of interest such that Plaintiff's failure to name Northwell is excused and Defendant' Motion is denied on this ground.  *See Gokdogan*, 2021 WL 4441417, at *10 (finding identity of interest where the first factor was neutral and all others weighed in favor of applying the exception); *Duverny v. Hercules Med. P.C.*, No. 18-CV-7652, 2020 WL 1033048, at *9 (S.D.N.Y. Mar. 3, 2020) (finding identity of interest where the first factor weighed against applying the exception and all others weighed in favor); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (same).

### 2.  Failure to Exhaust

Exhaustion of administrative remedies is a necessary precondition to bringing Title VII and ADA claims in federal court.  *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 437 (S.D.N.Y. 2023) (citing first *Legnani*, 274 F.3d at 686, then *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020)).  The Second Circuit has recognized that "claims . . . not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999).  The Second Circuit has advised that the focus of the inquiry "should be on the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate" the claims subsequently asserted in federal court.  *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (alteration and internal quotation marks

omitted).  Plaintiff concedes that he did not explicitly raise disability discrimination in his

NYSDHR Complaint, which was cross-filed with the EEOC, but argues that disability

discrimination and retaliation are reasonably related to the charge of race discrimination and

retaliation in his NYSDHR Complaint.  (Pl's Opp. 10–11.)  Plaintiff argues that "[t]he

overarching theme of discrimination and retaliation should encompass all forms of

discrimination experienced by [Plaintiff], including those related to disability."  (Pl's Opp. 11.)

Indeed, Plaintiff concedes that adverse actions related to his ADA race-based discrimination and

retaliation claims "may not have been explicitly linked to disability . . ., [but] still arose from a

pattern of discrimination that includes disability discrimination."  (*Id.*)

"Courts in the Second Circuit have generally held that claims alleging discrimination

based upon a protected classification which are different than the protected classification asserted

in administrative filings are not reasonably related."  *Ekpe v. City of New York*, No. 20-CV-9143,

2024 WL 1621207, at *3 (S.D.N.Y. Apr. 12, 2024) (citation and quotation marks omitted); *see*

*also Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2017 WL 1194699, at *4 (S.D.N.Y.

Mar. 30, 2017) (same).  More specifically, courts "typically [find] that Title VII claims are not

reasonably related to ADA claims."  *Espinoza v. Port Auth. of NY & NJ*, No. 19-CV-258, 2022

WL 623809, at *6 (S.D.N.Y. Mar. 2, 2022) (quotation marks and citation omitted).  That general

rule has particular force in this case, because the NYSDHR Complaint makes no mention of

Plaintiff's alleged disability or discrimination or retaliation in relation to that disability.  (*See*

*generally* NYSDHR Complaint.)  Thus, Plaintiff's ADA claim is not reasonably related to the

race discrimination included in the NYSDHR Complaint, and Plaintiff's ADA claims are

dismissed for failure to exhaust.  *See Kirkland-Hudson*, 665 F. Supp. 3d at 440–41 (finding that a

disability discrimination claim does not reasonably relate to a race discrimination claim asserted

in an EEOC Charge); *see also O'Quinn v. City of New York*, No. 19-CV-9663, 2021 WL

4429787, at *6 (S.D.N.Y. Sept. 27, 2021) ("Because Plaintiff did not raise the disability

discrimination he alleges to have suffered in his EEOC Charge—and because that discrimination

could not reasonably have been expected to fall within the scope of the EEOC investigation

growing out of the charge of race discrimination that was made—Plaintiff's ADA claims are

unexhausted and must be dismissed.") (alterations, quotation marks, and citation omitted); *De*

*Lorenzo v. King Kullen Grocery Co.*, No. 19-CV-3460, 2020 WL 7047314, at *9 (E.D.N.Y. Aug.

12, 2020) ("Plaintiff's complete failure to mention any disability leaves the Court with no reason

to believe that when the EEOC was investigating Plaintiff's claim of [discrimination and

retaliation], it would have included disability discrimination within the scope of its review."),

*report and recommendation adopted sub nom. De Lorenzo v. King Cullen Grocery Co. Inc.*,

2020 WL 7042835 (E.D.N.Y. Nov. 30, 2020).

    3.  Section 1981 Claims

    Defendants argue that Plaintiff's Section 1981 claims should be dismissed as precluded

under res judiciata and collateral estoppel by the determination of the NYSDHR.  (Defs' Mem.

18–24.)  Plaintiff argues that "res judicata and collateral estoppel should not apply here because

[P]laintiff is a pro se litigant . . . ."  (Pl's Opp. 12.)

    "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New

York preclusion law to New York state court judgments."  *Siji Yu v. Knighted, LLC*, 811 F.

App'x 55, 56 (2d Cir. 2020) (summary order); *Kirsch v. Bd. of Educ. of Williamsville Cent. Sch.*

*Dist.*, No. 15-CV-721, 2019 WL 2931671, at *7 (W.D.N.Y. Mar. 15, 2019) (same), *report and*

*recommendation adopted*, 2019 WL 2929514 (W.D.N.Y. July 8, 2019).  "New York law

provides that collateral estoppel, or issue preclusion, will apply if (1) the issue in question was

actually and necessarily decided in a prior proceeding [also called identity of issue], and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Siji Yu*, 811 F. App'x at 57 (internal quotations and alterations omitted). Though administrative proceedings are not 'judgments' for the purposes of the Full Faith and Credit Act, the Second Circuit has held that "quasi-judicial administrative fact-finding" is entitled to "preclusive effect where there has been a full and fair opportunity to litigate." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005); *see Ahmad v. N.Y.C. Dep't of Educ.*, No. 18-CV-3494, 2020 WL 13554609, at *7 (E.D.N.Y. Nov. 13, 2020) (same). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue." *McGrady v. New York State*, No. 21-CV-702, 2024 WL 248906, at *6 (W.D.N.Y. Jan. 23, 2024) (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001)).

### a.  Identity of Issues

Defendants argue that Plaintiff's Section 1981 claims "arise from the same events and allegations that gave rise to his administrative proceedings." (Defs' Mem. 19.) The NYSDHR investigated Plaintiff's claim that he was discriminated and retaliated against on the basis of his race and found no probable cause to support these claims. (*See* NYSDHR Determination 2.) Specifically, Plaintiff alleged that he was given more onerous work assignments than other non-Black employees and that he was given a poor performance evaluation in retaliation for his complaints to HR. (*See* NYSDHR Compl. 6.) These allegations match exactly the relevant portions of Plaintiff's Complaint concerning workload, (*see, e.g.*, Compl. ¶¶ 15–19), and retaliation, (*see, e.g.*, *id.* ¶¶ 26–29). Because Defendants have shown that the issues that Plaintiff

"raises now [were] raised in a previous proceeding, that the issue[s] [were] actually decided, and that the resolution of the issue[s] was necessary to the NYSDHR proceedings, . . . they have established identity of the issues." *McGrady*, 2024 WL 248906, at *6.

### b.  Full and Fair Opportunity to Litigate

Defendants submitted several documents related to the NYSDHR proceeding, including Plaintiff's complaint, (*see* NYSDHR Compl.), an investigative report, (*see* NYSDHR Rpt.), and the final determination, (*see* NYSDHR Determination).  Plaintiff does not argue that he did not have an adequate opportunity to litigate the facts underlying his claims before the NYSDHR. (*See generally* Pl's Opp.)

While Plaintiff's "pro se status weighs against applying collateral estoppel," *McGrady*, 2024 WL 248906, at *7 (citing *Kosakow*, 274 F.3d at 735–36), the Court concludes that it would not be unfair to apply collateral estoppel against Plaintiff.  First, Plaintiff "had the same ability and motivation to litigate the specific issue of [Defendants'] allegedly discriminatory conduct before the NYSDHR as [he] has before this Court."  *Id.*  (quotation marks and alterations omitted).  Second, it does not appear that any new evidence became available to Plaintiff after NYSDHR issued its determination.  Plaintiff suggests that his Complaint "*may* include new incidents, evidence or perspectives that were not fully explored or considered in the [NYSDHR's Determination]," (Pl's Opp. 12 (emphasis added)), and indeed the Complaint includes allegations that are not present in Plaintiff's original NYSDHR Complaint, including that Cardillo denied reassignment of duties due to Plaintiff's anxiety and panic attacks, (*see, e.g.*, Compl. ¶¶ 34–40), that Acosta ignored Plaintiff's report of Cardillo's behavior, (*see id.* ¶¶ 45–46), that requests to be moved to a different shift than Cardillo were ignored, (*see id.* ¶¶ 60–61), and that Cardillo had Plaintiff perform tasks that were not within his job description that resulted in a back injury, (*see*

*id.* ¶¶ 66–71).  However, these incidents do not constitute "*new* evidence that would support [his]

claims," *Wieder*, 2024 WL 5107625, at *11 (emphasis added), because NYSDHR refers to these

allegations in its investigation report, (*see generally* NYSDHR Rpt.).  Third, while no hearing

was held, Plaintiff was interviewed by a NYSDHR investigator on two occasions, (*see id.* 3), and

provided a rebuttal to Defendants' response, (*see id.* 2–3 (describing Plaintiff's rebuttal)).  For

these reasons, the Court finds that Plaintiff "has not carried [his] burden of showing that [he] was

denied a full and fair opportunity to litigate [his] discrimination claims in front of the NYSDHR,

even in light of his pro se status." *McGrady*, 2024 WL 248906, at *7 (italics omitted); *see*

*Proctor v. LeClaire*, 715 F.3d 402, 415 (2d Cir. 2013) (finding an issue collaterally estopped

where Plaintiff "ha[d] not shown any lack of opportunity to litigate").  Accordingly, Plaintiff's

Section 1981 discrimination and retaliation claims are collaterally estopped.

    4.  Title VII

    Plaintiff asserts a claim for race discrimination and retaliation in violation of Title VII.

(*See generally* Compl.)  Defendants do not reach the substance of Plaintiff's Title VII

discrimination and retaliation claims in their briefing; instead, they argue only that the Title VII

claims should be dismissed against Northwell for failure to name Northwell in Plaintiff's

NYSDHR Complaint.  (*See* Defs' Mem. 11.)  As discussed above, this is not ground to dismiss

these claims.  *See supra* Section II.B.1.  Defendants make no argument as to Plaintiff's Title VII

claims against Phelps Hospital.  (*See generally* Defs' Mem.; Defs' Reply.)  And the Court's

collateral estoppel analysis does not extend to these claims because "Title VII claims are not

given preclusive effect if unreviewed by a state court and are [thus] entitled to a de novo review

in federal court." *Alcena v. Raine*, 692 F. Supp. 261, 269 (S.D.N.Y. 1988) (citing *University of*

*Tennessee v. Elliott*, 478 U.S. 788 (1986)) (italics omitted)); *see also Alfredo's Foreign Cars,*

*Inc. v. Stellantis US LLC*, No. 22-CV-10478, 2024 WL 964967, at *3 n.4 (S.D.N.Y. Mar. 5, 2024) (noting that the Supreme Court in "*Elliott* separately held that state administrative findings do not preclude Title VII claims"). Accordingly, to the extent that Defendant's Motion can be read to argue for dismissal of Plaintiff's Title VII claims, it is denied.

### 5. NYLL

Defendants argue that this claim fails "because employees are not entitled to 'rest' breaks under the [NYLL] and Section 162 of the [NYLL] does not confer a private right of action to Plaintiff based on these violations." (Defs' Mem. 24.) Plaintiff responds that this claim should survive because he is a pro se litigant and because Plaintiff's claim may also be construed as a claim for recovery of wages for uncompensated time under NYLL Section 663. (*See* Pl's Opp. 14.)

NYLL Section 162 requires an employer to provide its employees with meal breaks of specified lengths based on the times and durations of their shifts. *See* N.Y. Labor Law § 162. However, it is well established that "there is no private right of action for violations of [NYLL Section 162]." *Chen v. Shanghai Café Deluxe, Inc.*, No. 16-CV-4790, 2023 WL 2401376, at *8 (S.D.N.Y. Mar. 8, 2023); *see also Haifeng Xie v. Sakura Kai I Inc.*, No. 17-CV-7509, 2019 WL 1568756, at *8 (E.D.N.Y. Apr. 11, 2019) (same). Accordingly, this claim is dismissed.

### 6. NYSHRL

Defendants argue that Plaintiff's NYSHRL claims fail because Plaintiff "elected his remedy by choosing to proceed with such claims before the NYSDHR." (Defs' Mem. 17 n.13.)

The NYSHRL is very clear that only where a "local commission on human rights" dismisses a plaintiff's claims on "grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled" can the plaintiff bring

subsequent suit in a court on the same claims.  N.Y. Exec. Law § 297(9).  As such, "for

NYSHRL claims, the remedies of administrative review through the NYSDHR or judicial review

are *mutually exclusive*."  *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-

CV-5247, 2020 WL 3618969, at *4 n.4 (S.D.N.Y. July 2, 2020) (alterations adopted) (citation,

alterations, and quotation marks omitted) (emphasis in original); *see also Chakraborty v. Soto*,

No. 16-CV-9128, 2017 WL 5157616, at *5 (S.D.N.Y. Nov. 6, 2017) ("The election-of-remedies

doctrine cuts a wide swath:  [i]t precludes the [c]ourt from hearing *any* claims that arise out of

the events that formed the basis of [the p]laintiff's NYSDHR [c]omplaint." (emphasis in

original)).  "Thus, by the terms of the statute, the NYSHRL claim, once brought before the

NYSDHR, may not be brought again as a plenary action in another court."  *Lester*, 2020 WL

3618969, at *4 (alterations adopted) (quoting *York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d

122, 127 (2d Cir. 2002)).

Here, Plaintiff's NYSDHR Complaint raised the issue of race discrimination and

retaliation.  (*See* NYSDHR Compl. 6.)  The NYSDHR conducted an investigation and concluded

that the record did not support a probable cause finding in support of Plaintiff's discrimination

and retaliation claims.  (*See* NYSDHR Determination 2–3.)  Therefore, the NYSDHR did not

dismiss Plaintiff's NYSHRL claims on grounds that would permit a subsequent suit.  *See* N.Y.

Exec. Law § 297(9).  Accordingly, Defendants are correct that the Court lacks jurisdiction over

NYSHRL claims of race discrimination and retaliation, which are dismissed.  *See Lester*, 2020

WL 3618969, at *4 (dismissing NYSHRL discrimination and retaliation claims where they had

already been adjudicated by the NYSDHR); *see also Vargas v. Reliant Realty*, No. 13-CV-2341,

2014 WL 4446165, at *8 (S.D.N.Y. Sept. 9, 2014) (barring NYSHRL discrimination and

retaliation claims where they had already been adjudicated by the NYSDHR), *appeal dismissed*,

No. 15-107 (2d Cir. Sept. 8, 2015); *Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F.

Supp. 2d 320, 325–26 (E.D.N.Y. 2007) (dismissing NYSHRL claim for lack of jurisdiction

where the NYSDHR had issued a no-probable-cause determination on the same allegations of

discrimination and retaliation as the ones present in the federal action); *Bleichert v. N.Y. State*

*Educ. Dep't*, 793 F. App'x 32, 34–35 (2d Cir. 2019) (summary order) (affirming dismissal of

NYSHRL for lack of subject matter jurisdiction because the plaintiff's complaint acknowledged

that the NYSDHR "found no probable cause on her claims" and noting the plaintiff's only

recourse was to appeal to the Supreme Court of the State of New York (record citation and

quotation marks omitted)).

### III.  Motion to Amend

#### A.  Standard of Review

"Under Rule 15(a), where a party cannot amend as a matter of course, '[a] party may

amend its pleading only with the opposing party's written consent or the court's leave,' however,

'[t]he court should freely give leave when justice so requires.'"  *Falls v. Pitt*, No. 16-CV-8863,

2020 WL 2097626, at *2 (S.D.N.Y. May 1, 2020) (quoting Fed. R. Civ. P. 15(a)(2)).  While the

Court "has discretion to deny leave [to amend] for good reason, including futility, bad faith,

undue delay, or undue prejudice to the opposing party[,] . . . outright refusal to grant the leave

without any justifying reason for the denial is an abuse of discretion."  *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (quotation marks and citations omitted);

*New Amsterdam Cap. Partners, LLC v. Wilson*, No. 11-CV-9716, 2015 WL 1137576, at *2

(S.D.N.Y. Mar. 13, 2015) ("[R]easons for a proper denial of leave to amend include undue delay,

bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the

opposing party." (citation omitted)).  Thus, in deciding whether to grant a motion to amend a

pleading, the Court considers "(i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." *Sandler v. Montefiore Health Sys., Inc.*, No 16-CV-2258, 2017 WL 2226599, at *2 (S.D.N.Y. May 22, 2017).

B. Analysis

Defendants argue that the Court should deny Plaintiff's Motion to Amend as futile. (*See* Defs' Opp. 3–6.) Plaintiff replies that he would like to "amend" his Complaint with evidence and that his amendment should not replace, but rather supplement the original Complaint. (*See* Pl's Reply 6.)

As discussed above, Plaintiff's ADA, Section 1981, NYLL, and NYSHRL claims are dismissed. Because Plaintiff's ADA claim is procedurally barred as not reasonably related, the dismissal is with prejudice. *See Lester*, 2020 WL 3618969, at *9 (dismissing plaintiff's hostile work environment claim where he failed to exhaust). Plaintiff's Section 1981 claim is dismissed with prejudice because "an amended pleading cannot cure the fact that Plaintiff is collaterally estopped from bringing the claim in federal court." *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *13 n.16 (S.D.N.Y. Feb. 14, 2018) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The NYSHRL claims "are dismissed for lack of subject-matter jurisdiction, and 'Article III deprives federal courts of the power to dismiss them with prejudice,' so the Court must dismiss them without prejudice, but declines to provide Plaintiff with an opportunity to amend at this point in the Action." *Lester*, 2020 WL 3618969, at *9 (alteration adopted) (quoting *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017)). Finally, because there is no private right of action under NYLL Section 162, the dismissal must be with prejudice. *Cf. Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, 216 F. Supp. 3d 328,

330 (S.D.N.Y. 2016) (noting that a claim under statutes that "do not supply a private right of action . . . must also be dismissed with prejudice.").  For these reasons, Plaintiff's Motion to Amend as it relates to his ADA, Section 1981, NYLL, and NYSHRL claims is denied as futile. Because his Title VII claims survive, Plaintiff's motion to amend is granted insofar as Plaintiff is permitted to file an amended complaint concerning only his Title VII race discrimination and retaliation claims and in accordance with the discussion in this Opinion & Order.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion is granted as to Plaintiff's ADA, Section 1981, and NYLL, which are dismissed with prejudice, granted as to the NYSHRL claims, which are dismissed without prejudice, and denied as to Plaintiff's Title VII claims.  If Plaintiff wishes to file an amended complaint in accordance with the above discussion, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is advised that the amended complaint will completely replace, not supplement, the Complaint.  The amended complaint must therefore contain all claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  The Clerk of the Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 25, 32.)

SO ORDERED.

Dated:    March 21, 2025
          White Plains, New York

_____
      KENNETH M. KARAS
      United States District Judge