UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT ARTIS,

*Plaintiff*,

v.

PHELPS MEMORIAL HOSPITAL
ASSOCIATION, *and*
NORTHWELL HEALTH,

*Defendants*.

No. 23-CV-9827 (KMK)

ORDER & OPINION

Appearances:

Vincent Artis
Sloatsburg, NY
*Pro se Plaintiff*

Eric David Raphan, Esq.
Jonathan Stoler, Esq.
Katerina Rose Mantell, Esq.
Maria Alejandra Gomez, Esq.
Sheppard, Mullin, Richter & Hampton LLP
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Vincent Artis ("Plaintiff"), proceeding pro se, brings this Action against Phelps

Memorial Hospital Association ("Phelps Hospital") and Northwell Health ("Northwell")

(together, "Defendants"), alleging racial discrimination and retaliation in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  (*See generally* Compl. (Dkt. No. 1).)

Before the Court are Plaintiff's objections to Magistrate Judge Andrew Krause's ("Judge

Krause") decisions dated October 16, 2025 and November 13, 2025 (together, "Plaintiff's

objections").  (*See* Pl.'s Appeal of Magistrate Judge's Decision on Oct. 16, 2025 ("Pl.'s Oct.

Objs.") (Dkt. No. 84); Pl.'s Appeal of Magistrate Judge's Decision on Nov. 13, 2025 ("Pl.'s

Nov. Objs.") (Dkt. No. 94).)  For the following reasons, Plaintiff's objections are overruled.

<u>I.  Background</u>

A.  <u>Factual Background</u>

The Court assumes the Parties' familiarity with the underlying facts, so it reviews only

those relevant to Plaintiff's objections.

On July 17, 2025, Plaintiff submitted ten requests for production from Defendants,

seeking documents related to the following topics:

1. The reason "Director Mario" and "Assistant Director Tony" were "fired, terminated, laid off, let go, etc."

2. "[A]ny complaints . . . filed with [the] corporate office"

3. The EEOC's investigation of Northwell for discrimination

4. The reason "Director Mario[']s boss[,] . . . Jeff Mea[d]e" was fired

5. "[C]omplaints [about] Supervisor Diego that [were] made" and the opportunity for Plaintiff to "look into [Supervisor Diego's] folder"

6. "[A]ll complaints from employees [about] anyone [in] the Housekeeping Department"

7. "[T]he [b]ill" for "Assistant Director Tony[']s] . . . wife['s] . . . brain surgery"

8. "[T]he records of all employees who w[ere] written up, fired, etc."

9. "[E]verything the H[]R Department ha[s] about employee[] complaints"

10. "All employee[] complaints to the [u]nion"

Letter from Vincent Artis to Court (July 17, 2025) 1 (Dkt. No. 75).)  After Defendants objected

to these requests, Plaintiff sent another letter requesting the Court's intervention because his

discovery requests "ha[d] all been denied."  (Letter from Vincent Artis to Court (Sept. 23, 2025)

1 (Dkt. No. 77).)  Plaintiff again listed his discovery requests and provided additional arguments

for how each request would further his case.  (*Id.* at 2–3.)  In response, the Court referred the

Parties to Judge Krause for non-dispositive pre-trial proceedings.  (*See* Order (Dkt. No. 78).)

On October 14, 2025, the Parties appeared before Judge Krause to address outstanding

discovery disputes.  (*See* Dkt. (minute entry for Oct. 14, 2025).)  At the hearing, Judge Krause

sustained Defendants' objections to Request Nos. 1, 4, 7, and 10.  (Order ("Oct. Order") ¶ 1(b)

(Dkt. No. 83).)  With respect to Request Nos. 1 and 4, Judge Krause determined that requests for

the personal information and records of Director Mario ("Mario"), Assistant Director Tony

("Tony"), and Jeff Meade, Mario's supervisor, were not relevant to Plaintiff's claims.  (Tr. of

Proceedings ("Oct. Tr.") 19:8–25; 22:22–24:18; 27:2–17.)  After Defendants and Judge Krause

questioned Request No. 7's relevance to the Action, Plaintiff withdrew it.  (*Id.* 27:20–28:20.)

Judge Krause also sustained Defendants' objection to Request No. 10 because Defendants

represented that they did not possess the requested information. [1]  (*Id.* 28:19–30:1.)

Additionally, Judge Krause ordered the Parties to confer regarding Request No. 3, in

which Plaintiff sought information about EEOC Charge No. 520-2023-01821, an administrative

matter concerning "onboarding discrimination and documentation."  (*Id.* 28:21–34:24; *see also*

---

[1] Although Plaintiff did not explicitly object to this ruling, (*see generally* Pl.'s Oct. Objs.; Pl.'s Nov. Objs.), the Court notes that Plaintiff's October Objections include an email from a union representative stating that "the [u]nion did not have a ratified and enforceable contract [with Defendants] until June 7[], 2024, . . . [so,] until that time[,] all complaints . . . would have been redirected to the HR team at Phelps[,]" (Ex. D, Pl.'s Oct. Objs.).  If Plaintiff wishes to object to Judge Krause's ruling based on this information, he must file an objection explicitly seeking to do so.  *See Felder v. Madison Square Garden*, No. 15-CV-4038, 2017 WL 1011493, at *1 n.2 (S.D.N.Y. Mar. 15, 2017) ("Although this [c]ourt affords pro se litigants leniency, even a pro se party's objections must be specific and clearly aimed at particular findings . . . ." (citation omitted)); *Olorode v. Stremingedge, Inc.*, No. 11-CV-6934, 2014 WL 3974581, at *1 (S.D.N.Y. Aug. 13, 2014) ("The objections of parties appearing pro se are generally accorded leniencency and should be constructed to raise the strongest arguments they suggest. Nevertheless, even a pro se party's objections must be specific and clearly aimed at particular findings . . . ." (citations and quotation marks omitted)).

Oct. Order ¶ 1(b).)  Judge Krause also ordered Plaintiff to narrow and re-submit Request Nos. 2, 5, 6, 8, and 9 to better fit the scope of this Action.  (Oct. Tr. 35:3–41:24; *see also* Oct Order ¶ 1(a)(i).)  Lastly, Judge Krause instructed Plaintiff to confer with Defendants regarding discovery deficiencies raised in Defendants' pre-conference letter and to file a written response to Defendants' letter.  (Oct. Order ¶ 2.)

Plaintiff filed his response to Defendants' pre-conference letter on October 25, 2025, in which he objected to five categories of interrogatories and documents sought by Defendants. (*See* Letter from Vincent Artis to Court (Oct. 25, 2025) (Dkt. No. 87).)  On November 12, 2025, the Parties appeared before Judge Krause to address Plaintiff's objections to Defendants' interrogatories and document requests.  (Not. of Ex. E, Tr. of Proceedings ("Nov. Tr.") 16:23–17:4 (Dkt. No. 102). )  The first category of requests "has to do with Plaintiff's medical, diagnostic, and therapeutic records."  (*Id.* 17:10–11.)  Because Plaintiff is seeking damages for emotional distress, Judge Krause ordered Plaintiff to provide Defendants with records for any mental health treatment he has received from May 16, 2022 to present.  (*Id.* 24:6–27:21, 29:18–22; Order ("Nov. Order") ¶ 1(c)(i) (Dkt. No. 91).)  Additionally, after attempting to clarify whether Plaintiff intends to seek damages for physical injuries related to the allegations in his Complaint, Judge Krause ordered Plaintiff to produce his medical, non-mental health records from January 1, 2021 to present.  (Nov. Tr. 33:19–42:14; Nov. Order ¶ 1(c)(ii).)  Judge Krause also entered a protective order so that Plaintiff's medical and mental health records would remain confidential and cannot not be used for any purpose outside of this litigation.  (Nov. Tr. 27:22–29:10; *see also* Confidentiality & Protective Order (Dkt. No. 90).)

Turning to Defendants' second category of requests, which encompasses "relevant communications on Plaintiff's personal devices[,]" (Nov. Tr. 45:24–46:1), Judge Krause

4

sustained Plaintiff's objection to Defendants' request that Plaintiff identify his cellphone number and cellphone carriers from January 1, 2022 to present because it was "wildly overbroad" and unlikely to lead to information relevant to Plaintiff's claims.  (*Id.* 52:20; *see also id.* 45:24–53:5; Nov. Order ¶ 1(d).)  However, Judge Krause directed Plaintiff to search for and produce "any records of telephone conversations, any text messages, and/or any emails between Plaintiff and any current or former employee of Defendants" pertaining to Plaintiff's employment with Defendants, his job duties, the instant Action, or any factual matter that is the subject of Plaintiff's Complaint.  (Nov. Order. ¶ 1(d).)  Judge Krause also ordered Plaintiff to search for and produce "any social media posts regarding his employment with Defendants and/or his [C]omplaint . . . ."  (Nov. Order. ¶ 1(g); *see also* Nov. Tr. 78:15–82:12.)

Judge Krause sustained Plaintiff's objections to Defendants' third category of requests "regarding [Plaintiff's] employment and mitigation efforts" as overly broad, though he ordered Plaintiff to produce documentation of the social security benefits he is receiving.  (Nov. Tr. 61:8; *see also id.* 61:7–70:23; Nov. Order. ¶ 1(e).)  Judge Krause also narrowed Defendants' requests regarding Plaintiff's litigation history to requiring Plaintiff to "provide Defendants with a list of any court, administrative and/or agency complaints or actions that Plaintiff has filed regarding mistreatment by an employer."  (Nov. Order. ¶ 1(f); *see also* Nov. Tr. 70:24–77:6.)  Lastly, Judge Krause denied Plaintiff's verbal application for Judge Krause to recuse himself from the instant Action because "displeasure with a judge's rulings is not a basis for seeking the judge's recusal."  (Nov. Order. ¶ 2; *see also* Nov. Tr. 4:9–6:4.)

B.  Procedural Background

Plaintiff filed his objections to Judge Krause's October Order on October 21, 2025.  (*See* Pl.'s Oct. Objs.)  Defendants filed their Opposition on November 4, 2025.  (*See* Def.'s Mem. of

Law in Supp. of their Opp'n to Pl.'s Appeal ("Defs.' Oct. Mem.") (Dkt. No. 88); Decl. of

Katerina Mantell, Esq. in Opp'n ("Mantell Oct. Decl.") (Dkt. No. 89).)

Plaintiff filed his objections to Judge Krause's November Order on November 20, 2025.

(*See* Pl.'s Nov. Objs.).  Defendants filed their Opposition on December 9, 2025.  (*See* Defs.'

Mem. of Law in Supp. of their Opp'n to Pl.'s Appeal ("Defs.' Nov. Mem.") (Dkt. No. 96); Decl.

of Katerina Mantell in Opp'n ("Mantell Nov. Decl.") (Dkt. No. 97)).  On December 29, 2025,

Plaintiff requested a stay pending the outcome of his Objections.  (*See* Mot. for Stay (Dkt. No.

104).)

## II.  Discussion

### A.  Standard of Review

A district court reviewing a decision from a magistrate judge addressing a dispositive

motion "may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge."  28 U.S.C. § 636(b)(1).  However, "[u]nder Rule 72 of the

Federal Rules of Civil Procedure, 'when a pretrial matter not dispositive of a party's claim or

defense is referred to a magistrate judge to hear and decide,' the district court 'must consider

timely objections and modify or set aside any part of the order that is clearly erroneous or is

contrary to law.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, Nos. 18-CV-1781, 18-

CV-7692, 2022 WL 153183, at *2 (S.D.N.Y. Jan. 18, 2022) (alteration adopted) (quoting Fed. R.

Civ. P. 72(a)).  "Orders involving discovery are considered nondispositive." *Pac. Life Ins. Co. v.*

*Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021).  "'An order is clearly erroneous

only when the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed' and is 'contrary to law if it fails to apply or misapplies

relevant statutes, case law[,] or rules of procedure.'" *Id.* (quoting *Blackrock Allocation Target*

*Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018)).  Because "[a] magistrate judge is best qualified to judge the entire atmosphere of the discovery process," his "rulings on discovery matters are entitled to substantial deference."  *Michelo*, 2022 WL 153183, at *2 (quotation marks omitted) (quoting *U2 Home Ent. Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)).

B.  Analysis

    1.  Access to Non-Party Individuals' Employment Files

Plaintiff first objects to Judge Krause's denial of Request No. 1, in which he seeks documents related to Mario and Tony's alleged firings.  (Pl.'s Oct. Objs. 1.)  In Plaintiff's view, Judge Krause erred by cutting off Plaintiff's recitation of case law "without [any] objection from Defendants['] lawyer, effectively "stopping [Plaintiff] from proving [his] case[.]"  (*Id.*) Additionally, Plaintiff asserts that "Judge Krause did all the talking and defending for [D]efendants['] lawyer[s]" and that Judge Krause had already decided in favor of Defendants before the October 14, 2025, hearing.  (*Id.*)

Review of the hearing transcript and legal precedent reveals that Judge Krause's decision regarding Request No. 1 is not clearly erroneous.  "It is well established that district courts possess the inherent power . . . to manage their dockets so as to achieve the orderly and expeditious disposition of cases."  *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).  "To the extent [Plaintiff] believes the [c]ourt was rude and disrespectful, the [c]ourt has a duty to control its legal proceedings, and it has the authority to limit arguments to keep the case on track."  *Shaw*

*v. Seel*, No. 20-CV-365, 2022 WL 17081589, at *2 (E.D. Wis. Nov. 18, 2022).  Judge Krause "was well within [his] discretion to limit [Plaintiff's] arguments during the hearing." *Id.*

Additionally, the transcript shows that Plaintiff was given the opportunity to cite many of the cases and raise many of the points included in his Objections during the October 14, 2025 hearing.  (*Contrast* Oct. Tr. 21:18–22:18, *with* Pl.'s Oct. Obj. 2–4.)  Additionally, Defendants submitted a written, detailed response to Plaintiff's discovery requests in advance of the October 14, 2025 conference, (*see generally* Defs.' Letter to Court (Oct. 6, 2025) (Dkt. No. 82)), eliminating the need for an extensive oral presentation of their position during it.

Judge Krause also correctly sustained Defendants' objections to Request No. 1, in which Plaintiff seeks confidential information pertaining to Mario and Tony's employment at Phelps based on speculation that they might have been fired for discrimination or other unlawful behavior.  (Oct. Tr. 20:6–21:17; 22:22–24:18; 27:2–17.)  "Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow parties to flesh out allegations for which they initially have at least a modicum of objective support." *Shih v. Broadway League*, No. 23-CV-8035, 2024 WL 4719586, at *5 (S.D.N.Y. Nov. 8, 2024) (alterations and citation omitted); *accord Cleveland-Goins v. City of New York*, No. 99-CV-1109, 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999).  Here, Plaintiff has provided no basis beyond mere speculation for the relevance of Mario and Tony's employment files to his Complaint, which alleges claims of race-based discrimination and retaliation against his former employer.  The Second Circuit has cautioned that requests for discovery based on "speculation as to what potentially could be discovered" should be denied. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *see also Livingston v. Kelly*, 423 F. App'x 37, 43 (2d Cir. 2011) (summary order) (holding that requests for discovery may be denied when they are "based only on speculation as

8

to what might be discovered"); *CITGroup/Comm. Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 409 (S.D.N.Y. 2009) ("A request for discovery based on 'speculation as to what potentially could be discovered' should be denied." (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001)).  Courts within the Second Circuit also acknowledge the confidential nature of employee records, especially those of non-parties, *see, e.g.*, *Duck v. Port Jefferson Sch. Dist.*, No. 07-CV-2224, 2008 WL 2079916, at *4 (E.D.N.Y. May 14, 2008) (acknowledging "an employer's interest in maintaining the confidentiality of employee personnel files"); *Gavenda v. Orleans County*, 182 F.R.D. 17, 25 (W.D.N.Y. 1997) ("Production of such documents containing intimately personal information about individuals, most of whom are not parties to [a] lawsuit, is warranted only when the party seeking the information articulates a specific need for the information."); *Burka v. N.Y.C. Transit Auth.*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986) ("A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy."), and have denied discovery requests for the personal records of non-parties where the information sought is not relevant to the underlying claims or proportional to the needs of the case, *see, e.g.*, *Felder v. Warner Bros. Discovery*, No. 23-CV-8487, 2025 WL 1718098, at *6 (S.D.N.Y. June 20, 2025) (denying the plaintiff's request for discovery into the for-cause termination of "all VPs, SVPs, and EVPs during the relevant period, regardless of the reasons for termination or the similarity of the circumstances of the termination to his own" because the request was "overbroad, lacks support in case law, and rests on a tenuous theory of relevance"); *Kozak v. Office Depot, Inc.*, No. 16-CV-943, 2020 WL 5757183, at *3–4 (W.D.N.Y. Sept. 28, 2020) (upholding a magistrate judge's ruling that the plaintiff's colleagues' personal records were not relevant to claims that her manager fabricated reasons for disciplining her).

Further, the cases cited by Plaintiff are factually distinct from his own situation and none stands for the proposition that a plaintiff should have access to the employment records of non-parties in situations analogous to Plaintiff's. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657–78 (1989) (analyzing whether statistical evidence can prove a prima facie case of disparate impact in hiring and finding that plaintiff-employees should have "broad access" to defendant-employers' records when trying to prove causation); *McMahon v. N.Y. Organ Donor Network, Inc.*, 28 N.Y.S.3d 282, 284 (Sup. Ct. 2016) (finding the plaintiff's requests for personnel records of comparator employees relevant to the issue of performance and reasons for termination when the plaintiff brought claims under New York Labor Law 740, and nowhere referencing federal discovery rules); *Ladson v. Ulltra E. Parking Corp.*, 878 F. Supp. 25, 28 (S.D.N.Y. 1995) (preliminarily denying a motion in limine to preclude references to corruption in the defendants' broader industry, but noting that the court might later grant the motion if the plaintiff "fails to connect [the alleged corruption] to his own circumstances"); *Henderson v. Nat'l R.R. Passenger Corp.*, 113 F.R.D. 502, 506–07 (N.D. Ill. 1986) (compelling production of investigation-related documents and comparator evidence in the form of "statistical data" when the plaintiff was terminated for sleeping on duty); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978) (holding the trial court erred in refusing to grant the plaintiff's request for a new trial after she discovered the defendant failed to produce relevant documents during discovery).

In sum, Judge Krause did not err in sustaining Defendants' objections to Request No. 1 because Plaintiff has offered no factual basis to connect the requested information to his claims. Further, Defendants have provided an appropriately tailored answer to Request No. 1 by certifying that Mario's employment with Phelps ended on December 27, 2024, Tony's employment with Phelps ended on November 13, 2024, and "neither was terminated because of

10

their performance[,] . . . for disciplinary reasons, or for any reason relating to Plaintiff's lawsuit." (Def.'s Oct. Mem. 12.)  Nothing more is required from Defendants.[2]

   2.  Access to Plaintiff's Mental Health and Medical Records

Plaintiff also objects to Judge Krause's decision to grant Defendants access to his medical and mental health records.  (Pl.'s Nov. Objs. ¶¶ 1–2.)  Plaintiff asserts that Defendants should only have access to these records for the dates during which he was employed by Phelps. (*Id.* ¶ 1.)  However, as Judge Krause explained, (*see* Nov. Tr. 25:18–24), "[i]t is well-settled that a plaintiff's pre-injury medical records are relevant to the issue of whether the alleged injuries were caused by the defendant, or based on a pre-existing condition." *Adams v. Taylor*, 717 F. Supp. 3d 300, 304 (W.D.N.Y. 2024) (collecting cases); *see also Milner v. City of Bristol*, No. 18-CV-1104, 2020 WL 6049261, at *4 (D. Conn. Oct. 13, 2020) ("[I]nformation regarding [the] plaintiff's pre-existing physical and mental health conditions is relevant to determining the scope and severity of the alleged injuries sustained." (collecting cases)).  Furthermore, based on Plaintiff's representations to Judge Krause during the hearing, Judge Krause narrowed Defendants' request to only require Plaintiff to authorize the release of his mental health records from the day Plaintiff started working at Phelps to present.  (*See* Nov. Tr. 43:7–21 (narrowing the time period for Plaintiff's discoverable mental health records to May 16, 2022 to present).) Similarly, he narrowed Defendants' request to only require Plaintiff to authorize the release of his medical records from January 1, 2021 to present.  (*Id.* 42:6–14; 43:7–21.)  By placing these restrictions on Defendants' requests, Judge Krause ensured that the requests were narrowly

---

   [2] Plaintiff also objects to Judge Krause's handling of Request No. 3, in which Plaintiff seeks information about an EEOC investigation into Phelps.  (Pl.'s Oct. Objs. 2.)  However, Judge Krause ordered the Parties to confer about this request, (Oct. Tr. 30:4–34:24; Oct. Order ¶ 1(b)), so he has not yet denied it.  Thus, there is no decision for the Court to review.

tailored to the relevant time period in this Action. *See Milan v. Sprint Corp.*, No. 16-CV-4451, 2018 WL 1665690, at *4 (E.D.N.Y. Apr. 6, 2018) ("It is worth noting that [the magistrate judge] significantly constrained the scope of [the plaintiff's] original discovery request . . . . By so doing, [the magistrate judge] tailored the initial broad request to a scope that is now proportional to the needs of the case.").

Plaintiff also expresses concern that granting Defendants access to his medical and mental health records will mean these records can be used in another case he has filed against some of the same parties. (Pl.'s Nov. Obj. ¶¶ 1–2.) However, Judge Krause entered a protective order so that Plaintiff's medical and mental health records would remain confidential and cannot be used outside this Action. (Nov. Tr. 27:22–29:10; *see also* Confidentiality & Protective Order ¶ 2 ("The Confidential Information disclosed will be held and used by the person receiving such information *solely for use in connection with this [A]ction*." (emphasis added).)

In sum, Judge Krause did not err in granting Defendants access to Plaintiff's mental health and medical records because Plaintiff put his mental and physical conditions at issue in this Action. Further, the protective order entered by Judge Krause protects Plaintiff's records from being used in other cases.

### 3. Access to Plaintiff's Relevant Communications

Next, Plaintiff challenges Judge Krause's order that Plaintiff must search for and produce communications on his personal devices relating to the subject matter of his Complaint on First Amendment grounds. (Pl.'s Nov. Objs. ¶ 3.) However, the First Amendment has no bearing in this context because "[t]he Free Speech Clause of the First Amendment constrains governmental actors[,]" *Manhattan Comm. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019), not private parties. Additionally, as Judge Krause explained, his Order only requires Plaintiff to produce

communications about the subject matter of Plaintiff's Complaint, which is an "appropriate, . . . very common" request in civil cases.  (Nov. Tr. 53:7; *see also id.* 53:8–61:6 (explaining the relevance of such communications and how Plaintiff can identify what is responsive to Defendants' request).)  Case law confirms that communications related to the allegations in a complaint are frequently produced in civil cases.  *See, e.g.*, *We the Protesters, Inc. v. Sinyangwe*, 348 F.R.D. 175, 177–78 (S.D.N.Y. 2024) (discussing the importance of text messages as evidence and the need for parties to produce them when they are relevant to the claims at issue); *Al Thani v. Hanke*, No. 20-CV-8181, 2022 WL 1684271, at \*1–2 (S.D.N.Y. May 26, 2022) (ordering the plaintiff to produce text messages between her and the defendant related to the events in her complaint).  Accordingly, Judge Krause's order regarding Plaintiff's relevant communications is affirmed.

> 4.  Recusal

Lastly, Plaintiff objects to Judge Krause's refusal to recuse himself from this Action. (Pl.'s Nov. Objs. ¶ 4.)  According to Plaintiff, Judge Krause "cannot be fair and impartial" because he refused to allow Plaintiff to serve summonses from a different case on several of Defendants' non-party employees by handing them to Defendants' counsel at the November 13, 2025 conference.  (*Id.*)  Plaintiff also takes issue with Judge Krause's alleged "praise" for Defendants' counsel during both the October and November hearings.  (*Id.*)

First, as Judge Krause explained, (*see* Nov. Tr. 21:17–24:5), just because Defendants' counsel represents them in this case does not mean that counsel represents Defendants in every case.  Further, even if Defendants' counsel was representing them in Plaintiff's other case, "[t]he law is clear that an attorney not authorized to accept service for his client may properly decline to accept service of process given that 'service of process on an attorney not authorized to accept

13

service for his client is ineffective.'" *Junior-Donohue v. Fudge*, No. 23-CV-2474, 2023 WL 5152299, at *2 (S.D.N.Y. Aug. 10, 2023) (quoting *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990)). Here, Defendants' counsel made clear that she was not authorized to accept service. (Nov. Tr. 20:24–21:1.) Thus, Judge Krause did not err in refusing to allow Plaintiff to effect service on Defendants in his other case by serving Defendants' counsel during the November proceeding because such service would have been ineffective.

Additionally, as to Plaintiff's argument that Judge Krause's compliments of Defendants' counsel indicate that he cannot be impartial, "a judge's expression of admiration of counsel is not a basis for disqualification." *Katzman v. Victoria's Secret Catalogue*, 939 F. Supp. 274, 279 (S.D.N.Y. 1996). Further, "it is well-established that 'a judge is not required to recuse . . . [him]self simply because a litigant before the judge has filed suit or made a complaint against'" him. *Asensio v. DiFiore*, No. 18-CV-10933, 2019 WL 4392743, at *4 (S.D.N.Y. Sept. 13, 2019) (quoting *Jenkins v. Saldus*, No. 04-CV-1595, 2004 WL 1238360, at *1 (S.D.N.Y. June 3, 2004)). Accordingly, the objection to Judge Krause's decision not to recuse himself from this case is rejected, and Plaintiff's Motion for a Stay is denied because the rules governing judicial conduct "do not require that proceedings in an on-going case be stayed pending the outcome of a complaint against the presiding judge." *Jackson v. Scotts Co.*, No. 08-CV-1064, 2009 WL 321010, at *5 (S.D.N.Y. Feb. 10, 2009).[3]

---

[3] Plaintiff's other rationale for requesting a stay—that this Action should not proceed until his objections are decided, (Mot. for Stay 1)—is now moot because the Court has evaluated Plaintiff's objections and found them to be meritless.

14

### III.  Conclusion

For the reasons set forth above, Plaintiff's objections are overruled and Judge Krause's October and November Orders are affirmed.  The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. No. 84, 96, and 104 and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:   May 18, 2026
     White Plains, New York

KENNETH M. KARAS
United States District Judge

15